IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00604-DME-CBS

MICHAEL WAYNE BINGHAM,
        Plaintiff,

v.

LT. KOCHEV[A]R,
SGT. MARTIN,
SGT. STO[D]GHILL, and
C/O CLINTON AULTMAN,
        Defendants.[1] [2]

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on the Motion for Summary Judgment filed

by Defendants Kochevar, Martin, Stoghill, and Aultman on November 22, 2011 (Doc. #

136).   Pursuant to the Order of Reference dated November 10, 2010 and the

memorandum dated November 23, 2011, the Motion was referred to the Magistrate Judge

to "submit proposed findings of fact and recommendations . . .."  (*See* Docs. # 79, # 137).

The court has reviewed the Motion, "Plaintiff's Rebuttal to Defendants['] Motion for

Summary Judgment" ("Response") (filed December 21, 2011) (Doc. # 142), Defendants'

Reply (filed January 4, 2012) (Doc. # 143), the affidavits and exhibits, the entire case file,

and the applicable law and is sufficiently advised in the premises.

---

[1]     Defendants Tappi, Braden, Espinoza, Gonzales, Lucero, and Robinson were
dismissed from this action on July 7, 2010.  (*See* "Order to Dismiss in Part and to Draw
in Part" (Doc. # 41)).  Defendants Zavaras, Timme, Directo, Moore, Milyard, and Lane
were dismissed from this action on July 1, 2011.  (*See* "Order Overruling Objections
and Adopting Recommendation of United States Magistrate Judge" (Doc. # 114)).

[2]     The case caption reflects a misspelling of Defendants Kochevar and Stodghill's
names.  The court hereinafter will use the correct spellings Kochevar and
Stodghill.

I.      Background

Plaintiff, Mr. Bingham, is currently incarcerated at the Sterling Correctional Facility ("SCF") of the Colorado Department of Corrections ("CDOC") in Sterling, Colorado.  At the court's direction, Mr. Bingham filed his Second Amended Complaint ("SAC") on June 11, 2011.  (*See* "Order Directing Plaintiff to File Amended Prisoner Complaint" (Doc. # 19); Minute Order (Doc. # 29);  Minute Order (Doc. # 32)).  Proceeding *pro se*, Mr. Bingham brings this civil action pursuant to Title 42 U.S.C. § 1983.  (*See* SAC (Doc. # 36) at p. 1 of 19).  Mr. Bingham's allegations arise from events that occurred in September and October of 2009, while he was incarcerated at the Fremont Correctional Facility ("FCF") of CDOC.  Mr. Bingham initially alleged three claims.  On July 1, 2011, the court dismissed "Count Two" and "Count Three."  (*See* Doc. # 114).  The court did not address "Count Four" in its July 1, 2011 Order.  (*See* Doc. # 114).  As Defendants Braden and Espinoza were dismissed from this action, the court need not address Count Four as to those two Defendants.  To the extent that Defendant Aultman is named in Court Four, Defendants have addressed and the court addresses, *infra.*, this claim.  (*See* Doc. # 36 at 12 of 19, ¶ 48; Motion for Summary Judgment (Doc. # 136) at 19 of 21).

In "Count One," Mr. Bingham alleges "Breach of Duty to Protect" against the remaining Defendants Kochevar, Martin, and Stodghill for "deliberate indifference to plaintiff's health and safety by failing to protect him from a prison attack . . . ."  (*See* Doc. # 36 at p. 10 of 19).  Mr. Bingham alleges that in mid to late September 2009, he met with Defendant Martin "and informed him" of "Assaults, Extortion, & Threats by the 211 gang." (*See* Doc. # 36 at 8 of 19).  Mr. Bingham alleges that on October 4, 2009, "inmate Brasher assaulted" him.  (*See id.*).[3]  Mr. Bingham also brings Count One against Defendant Aultman for "spraying of OC to plaintiff's eyes" while subduing the altercation between Mr.

---

[3]      The record refers to inmate "Brasher" and "Brashear."  The court hereinafter utilizes the spelling "Brashear."

Brashear and Mr. Bingham.  (*See id.* at ¶ 41).   In Count Four, Mr. Bingham alleges that Defendant Aultman violated his due process rights "when he flat out lied on the report when h[e] put the date of discovery as 10/16/2009" and "paraded plaintiff through the Chow Hall, made comments to staff and made fun of the plaintiff[']s situation to any and all that would listen."  (*See* SAC (Doc. # 36) at 12 of 19, ¶ 48).   As relief, Mr. Bingham seeks compensatory damages, injunctive relief, declaratory relief, attorneys' fees and costs.  (*See id.* at p. 13 of 15).

II.     Standard of Review

Defendants move pursuant to Fed. R. Civ. P. 56 for summary judgment as to the claims and Defendants remaining in the SAC.   "Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bristol Co. L.P. v. Bosch Rexroth, Inc.*, 758 F. Supp. 2d 1172, 1177 (D. Colo. 2010) (internal quotation marks and citation omitted).   "The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate specific facts showing that there is a genuine issue for trial."   *Id.*   "Only disputes over material facts can create a genuine issue for trial and preclude summary judgment."  *Id.* (citation omitted).   "A disputed fact is material if under the relevant substantive law it is essential to proper disposition of the claim."  *Id.*  "An issue is genuine if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party."  *Id.* (internal quotation marks and citation omitted).   "When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party."  *Id.* (citations omitted).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule

applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall*, 935 F.2d at 1110 n. 3 (citations omitted). However, the court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

Defendants submit evidence in support of summary judgment on Mr. Bingham's remaining claims. As Defendants' Motion is properly supported, the burden shifts to Mr. Bingham to show, by tendering competent evidence, that summary judgment is not proper. The court must determine whether Mr. Bingham has met his burden of presenting specific facts to overcome Defendants' Motion.

III.   Analysis

Mr. Bingham brings his claims pursuant to 42 U.S.C. § 1983. Section 1983 creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution." 42 U.S.C. § 1983. Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). *See also Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) ("In order to successfully state a cause of action under section 1983, [Mr. Bingham] must allege . . . the deprivation of a federal right. . . .") (internal quotation marks and citation omitted). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

A.    Liability of Defendants in their Official and Individual Capacities

Mr. Bingham sues Defendants in both their individual and official capacities.  (*See* Doc. # 36 at 2-8 of 19).  To the extent that Mr. Bingham is suing Defendants in their official capacities, he is actually attempting to impose liability on their employer, the CDOC.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state).  The CDOC is considered an agency of the State of Colorado.  *See* Colo. Rev. Stat. § 24-1-128.5.  The Eleventh Amendment provides immunity for state governmental entities sued in federal court for monetary damages under § 1983.  *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citation omitted).  The Eleventh Amendment confers total immunity from suit, not merely a defense to liability.  *Ambus*, 995 F.2d at 994 (citation omitted).  Further, states and state officials sued in their official capacities are not "persons" within the meaning of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  To the extent that Mr. Bingham seeks monetary damages from Defendants in their official capacities pursuant to § 1983, such claim is properly dismissed without prejudice.[4]

In addition to monetary damages, Mr. Bingham seeks relief in the nature of injunctive relief "that the disciplinary charge be removed from the plaintiffs official CDOC record," that "'All' good/earn time be fully restored," that "CDOC put 'ALL' of the plaintiffs' custody issues i.e. . . . inmates on DCIS," and that "CDOC place plaintiff either on SCF

---

[4]    Defendants' assertion of Eleventh Amendment immunity constitutes a challenge to the allegations of subject matter in the SAC.  *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) ("an assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court").  Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).  The determination of subject matter jurisdiction is a threshold issue of law, *Madsen v. U.S. ex rel. U.S. Army Corps. of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987), that the court addresses before turning to the merits of the case.  *Ruiz*, 299 F.3d at 1180.  "Generally, a dismissal for lack of subject matter jurisdiction is without prejudice and does not have a preclusive effect."  *Garman v. Campbell County Sch. Dist. No. 1*, 630 F.3d 977, 985 (10th Cir. 2010).  *See also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice.").

East Side or Fort Lyons. . .."  (*See* Doc. # 36 at 13 of 19).  Actions in federal court seeking injunctive relief against state officials are not always barred by the Eleventh Amendment.  *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official).  *See also Will*, 491 U.S. at 71 n. 10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (quoting *Graham*, 473 U.S. at 167 n. 14).

The Eleventh Amendment also does not bar actions for damages against state officials in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985).  To the extent that Mr. Bingham is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law.  *Graham*, 473 U.S. at 165-67.  The court proceeds to evaluate whether Mr. Bingham has met his burden on summary judgment to demonstrate his claims against Defendants in their official capacities for injunctive relief or in their individual capacities.

B.     Factual Record

Upon arrival at FCF on February 12, 2008, Mr. Bingham was assigned to Cell House 2.  (*See* Affidavit of Eldon Martin, Exhibit A-1 to Motion (Doc # 136-1) at ¶ 4; Affidavit of Jeremy Stodghill, Exhibit A-2 to Motion (Doc. # 136-2) at ¶ 5).  On that date, Defendant Martin held the title of Correctional Officer II, or Sergeant, and was assigned as the Move Sergeant for Cell House 2 at FCF.  (*See* Doc. # 136-1 at 1 of 5, ¶ 2).  As the Move Sergeant, Defendant Martin was responsible for maintaining the safety and security of the Cell House by ensuring that inmates were placed with appropriate cellmates.  (*See id.* at ¶ 3).

Throughout 2008 and into the middle of September 2009, Mr. Bingham complained to Defendant Martin about his living conditions and the other inmates around him. (*See* Doc. # 136-1 at 2 of 5, ¶¶ 6-7).  Based on Mr. Bingham's complaints, Defendant Martin offered at different times to move him to other living pods within Cell House 2.  (*See id.* at ¶ 9).  While Defendant Martin had authority to move offenders within Cell House 2,  it was not within his authority to move offenders outside of Cell House 2.  (*See id.*).  On some occasions Mr. Bingham moved to a different pod within Cell House 2 and on other occasions he declined the offers to move.  (*See id.* at 3 of 5, ¶¶ 10-11).  During this time, Mr. Bingham did not express to Defendant Martin that he was in fear for his life, that he was in any danger, or that he was living in unsafe conditions.  (*See id.* at ¶ 8).

In approximately mid-September 2009, Mr. Bingham told Defendant Martin that he felt threatened and would like to be moved out of the cell house. (*See id.* at 3 of 5, ¶ 12). Mr. Bingham did not provide Defendant Martin with any specifics about the nature of any threats or who was making the threats.  (*See id.*).  Defendant Martin explained to Mr. Bingham that a transfer out of the cell house was not within the scope of his authority and that in order to potentially facilitate such a move, Defendant Martin's supervisor would have to be involved.  (*See id.* at ¶ 13).  Mr. Bingham indicated that he would like to speak with the supervisor.  (*See id.* at ¶ 14).   Defendant Martin and his supervisor, Lt. Directo, subsequently met with Mr. Bingham.  (*See id.* at ¶ 15).  During the meeting, Mr. Bingham stated "that he felt it necessary to move from the cell house because he was feeling threatened by gang members." (*See id.* at ¶ 16).  Mr. Bingham did not provide any specific details about the nature of the threats, who was threatening, how the threat was to be carried out, or why he felt threatened.  (*See id.*).  After the meeting, at Lt. Directo's direction, Defendant Martin notified the facility's Intelligence Officer via email regarding Mr. Bingham's concerns and his desire to be moved out of Cell House 2.  (*See id.* at ¶ 17).

Defendant Stodghill was a Sergeant and swing shift supervisor for Cell House 2 at

FCF during the time period relevant to Mr. Bingham's claims.  (See Doc. # 136-2 at 1 of 4, ¶ 2).  On October 2, 2009 during Defendant Stodghill's evening rounds, "Mr. Bingham alleged that he was being threatened." (*See* Doc. # 136-2 at 2 of 4, ¶ 6).  Mr. Bingham did not indicate that these perceived threats were of a dangerous or life-threatening nature, but stated that he was concerned about extortion efforts by specific inmates who pressured him to buy goods from the canteen.  (*See id.* at ¶ 7).  Defendant Stodghill did not perceive an immediate threat of violence.  (*See id.* at ¶ 7).  Mr. Bingham did not indicate that he felt threatened by any inmates who were not living in Cell House 2.  (*See id.* at 3 of 4, ¶ 13; *see also* Doc. # 136-1 at 4 of 5, ¶ 21).  Inmate Brashear was not housed in Cell House 2. (*See* Doc. # 136-2 at 3 of 4, ¶ 14; Doc. # 136-1 at 4 of 5, ¶ 20).

Mr. Bingham inquired how he could respond if attacked.  (*See id.* at ¶ 9).  Defendant Stodghill told Mr. Bingham that he could defend himself if he was attacked.  (*See id.*). Pursuant to "normal protocol," Defendant Stodghill notified the shift commander and the Intelligence Officer, Lt. Kochevar, "regarding the verbal notification of threat I had received from Mr. Bingham."  (*See id.* at ¶ 8).  Defendant Stodghill did not encourage Mr. Bingham to fight or express an opinion  regarding gangs within the CDOC.  (*See id.* at 3 of 4, ¶ 10). Defendant Stodghill later went to Mr. Bingham's cell to tell him he had conveyed his concerns to the appropriate individuals.  (*See id.* at ¶ 11).  Mr. Bingham did not mention any immediate or serious threat to his body or life.  (*See id.*).  Defendant Stodghill did not have the authority to move Mr. Bingham or any inmate.  (*See id.* at ¶ 12).

At the time relevant to Mr. Bingham's claims, Defendant Aultman was a Correctional Officer I, or Security Officer, assigned as a yard officer and responsible for "observational support and security in the dining hall while the offenders ate in the afternoon." (*See* Affidavit of Clinton Aultman, Exhibit A-3 to Motion (Doc. # 136-3) at 1 of 47, ¶ 2).  Shortly before 1:00 p.m. on October 4, 2009, while observing inmates eating lunch in the Westside dining hall, Defendant Aultman heard another officer call for two offenders to stop fighting.

(*See id.* at ¶ 4).  Defendant Aultman observed Mr. Bingham and Mr. Brashear hitting each other with closed fists.  (*See id.* at 2 of 47, ¶ 5).  Defendant Aultman approached and gave both inmates several verbal commands to stop fighting.  (*See id.* at ¶ 6).  Neither inmate complied with the orders.  (*See id.*).  Defendant Aultman, assisted by other staff members, attempted to separate Mr. Bingham and Mr. Brashear, but neither inmate complied with staff's attempts to separate them.  (*See id.* at ¶ 7).  Defendant Aultman then discharged Oleoresin Capsicum (OC), pepper spray, in approximately a two-second burst towards both Mr. Bingham and Mr. Brashear in order to gain compliance.  (*See id.* at ¶ 9).  Mr. Bingham then complied and allowed staff to apply wrist restraints.  (*See id.* at ¶ 10;  *see also* Incident Reports (Docs. # 136-3 at 7, 9-11 of 47)).  Defendant Aultman did not spray OC toward Mr. Bingham after he was restrained.  (*See id.*).

Defendant Aultman gave inmate Brashear four additional warnings to stop resisting, but inmate Brashear refused to comply.  (*See id.* at ¶¶ 11-12).  Defendant Aultman again discharged OC toward inmate Brashear.  (*See id.* at ¶ 13).  Inmate Brashear then complied with orders and staff was able to apply restraints.  (*See id.* at ¶ 14).  Mr. Bingham and Mr. Brashear were taken to the medical department for examination by medical staff.  (*See id.* at ¶ 15; *see also* CDOC Clinical Services Anatomical Form (Doc. # 136-3 at 8 of 47)).  Mr. Bingham was escorted to Cell House 5 and placed in the F-pod shower for decontamination.  (*See id.* at ¶ 16).

Defendant Kochevar was the Intelligence Officer at FCF during the relevant time period.  (*See* Affidavit of Jon Kochevar, Exhibit A-4 to Motion (Doc. # 136-4) at 1 of 4, ¶¶ 2-3).  Defendant Kochevar first became aware of Mr. Bingham on October 5, 2009, after the fight had occurred.  (*See id.* at 2 of 4, ¶¶ 6-7).  After the fight, both Mr. Bingham and Mr. Brashear were charged and ultimately found guilty of disciplinary infractions for Fighting and Disobeying a Lawful Order in violation of the Code of Penal Discipline (COPD).  (*See* Doc. # 136-3 at 4 of 47, ¶ 19; *see also* COPD (Doc. # 136-3) at 12-47 of 47; Notice of

Disciplinary Charges, Disciplinary Hearing Worksheet, Hearing Continuances, Disposition of Charges (Doc. # 136-6) at 4-11 of 11).   Because he was directly involved with the incident, Defendant Aultman initiated the Notice of Charge(s) charging Mr. Bingham with Fighting and Disobeying a Lawful Order in violation of the COPD. (See Doc. # 136-3 at 4 of 47, ¶¶ 20-21).

C.     Exhaustion of Administrative Remedies

Defendants move for summary judgment on the ground that Mr. Bingham failed to exhaust his administrative remedies under the Prison Litigation Reform Act of 1996, ("PLRA").   The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   The "PLRA's exhaustion requirement applies to all inmate suits about prison life."   *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *See also Booth v. Churner*, 532 U.S. 731, 731-32 (2001) (PLRA requires exhaustion in all matters regardless of remedy sought and availability of remedy at the agency level).   Even where the "available" remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available.   *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citing *Booth*, 532 U.S. at 731 (holding that even where an inmate sought money damages and the grievance process did not permit such awards, exhaustion was required as long as there was authority to take some responsive action)).

The PLRA's requirement that an inmate exhaust all available administrative remedies before initiating suit is mandatory.   *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").   *See also Jones v. Bock*, 549 U.S. at 210-212 ("There is no question that exhaustion is

mandatory under the PLRA and that unexhausted claims cannot be brought in court."). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, -- rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. at 218 (internal quotation marks and citation omitted). Thus, it is the prison's own grievance procedures that set forth what the prisoner must do in order to exhaust his or her administrative remedies. *Id.*, 549 U.S. at 218 (citation omitted). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The CDOC has a Grievance Procedure available to inmates which entails a formal three-step written grievance procedure. (*See* Affidavit of Anthony Decesaro, Exhibit A-5 to Defendants' Motion (Doc. # 38-2) at 1-3 of 18; CDOC Administrative Regulation ("AR") No. 850-04, Exhibit A-5 to Defendants' Motion (Doc. # 136-5 at 4-18 of 18)). A court may take judicial notice of agency rules and regulations. *Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984). *See also Antonelli v. Ralston*, 609 F.2d 340, 341, n. 1 (8th Cir. 1979) (judicial notice taken of Bureau of Prisons' Program Statement); *Muniz v. Kaspar*, No. 07-cv-01914-MSK-MJW, 2008 WL 3539270, at * 3 (D. Colo. Aug. 12, 2008) (taking "judicial notice of AR 850-04, the administrative regulation describing the grievance process").[5]

AR 850-04 requires an inmate to file a Step 1 grievance, a Step 2 grievance, and a Step 3 grievance. (*See* AR 850-04 Section IV. F. 2. (Doc. # 136-5 at 8 of 18)). The inmate must state in writing the grievance and the relief requested. (*See* AR 850-04 Section IV. C.). A Step 1 grievance must be filed no later than thirty calendar days after

---

[5] Copies of unpublished cases cited are attached to this Recommendation.

the date the prisoner knew, or should have known, of the facts giving rise to the grievances. (*See* AR 850–04 IV. H. 1. a.).  When an offender wishes to proceed to the next step in the process, the offender shall file the next step within five calendar days after receiving the response. (*See* AR 850-04 Section IV. H. 1. c.).  In the event the time limit concerning any step of the process expires without a response, the offender may proceed to the next step within five calendar days of the date the response was due.  (*See* AR 850–04 IV. H. 1. d.).  A Step 3 grievance is the final step in the grievance process.  (*See* Doc. # 38-2 at 2 of 18, ¶ 8).  As a Step 3 Grievance Officer for CDOC, Mr. Decesaro reviewed CDOC records of Mr. Bingham's grievances.  (*See* Doc. # 136-5 at 2 of 18, ¶ 10).  CDOC records indicate that Mr. Bingham did not file a Step 3 grievance concerning his allegations that Defendants failed to protect him from the altercation that occurred on October 4, 2009 or that any of the Defendants used excessive force against him in attempting to control the situation.  (*See id.* at ¶ 11).

Mr. Bingham does not present any evidence that he filed a Step 3 grievance.  Mr. Bingham argues that his appeal of his COPD conviction satisfied the exhaustion requirement.  (*See* Response (Doc. # 142) at 3 of 17; Offender Appeal Form (Doc. # 142 at 11 of 17)).  Where a prisoner seeks to challenge a disciplinary conviction, he must follow the rules and procedures set forth in the COPD, not those contained in the grievance procedures.  Mr. Bingham's challenge of the validity of his disciplinary conviction is not related to and did not exhaust his civil constitutional claims.  *See Griffin v. Samu*, 65 F. App'x 659, 661 (10th Cir. Mar. 17, 2003) (challenge to validity of disciplinary action through prison appeal system, "even under the most expansive of readings," did not allege violation of First Amendment, barring First Amendment claim until administrative remedies exhausted); *Ross v. Gibson*, 2006 WL 2567853, at * 2 (D. Colo. Aug. 8, 2006) (where plaintiff filed civil lawsuit seeking redress for allegations of violations of his constitutional rights, and not as a challenge to his disciplinary conviction, the grievance procedure was

an avenue of administrative remedy available to him and his failure to utilize it was fatal to his claims) (citation omitted); *Webster v. Kurtz*, No. CIVA04CV02663EWNMEH, 2006 WL 893606, at * 2 (D. Colo. Mar, 31, 2006) ("Since the COPD does not govern the claims here, the grievance procedures apply and are thus an available administrative remedy.").

The evidence demonstrates that Mr. Bingham did not complete the CDOC's 3-step grievance process as to his constitutional claims.  The record supports the affirmative defense that Mr. Bingham did not exhaust his available administrative remedies.  Mr. Bingham's arguments and evidence do not support the existence of any genuine issue of fact to demonstrate proper exhaustion of administrative remedies for his constitutional claims.  Defendants are entitled to summary judgment on Mr. Bingham's Count One and Count Four based on his failure to exhaust administrative remedies.

D.     Count One

Even if Mr. Bingham's claims were not precluded for failure to exhaust his available administrative remedies, the court concludes that he fails to establish a violation of his Eighth Amendment rights.  Mr. Bingham alleges violation of the Eighth Amendment by Defendants Kochevar, Martin, and Stoghill based on "deliberate indifference to plaintiff's health and safety by failing to protect him from a prison attack . . . ." and against Defendant Aultman for  "spraying of OC to plaintiff's eyes" while subduing the altercation between Mr. Brashear and Mr. Bingham.  (*See* Doc. # 36 at p. 10 of 19,  ¶¶ 35, 41).  The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII.  Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. at 319.  Where an Eighth Amendment claim is based upon conditions of confinement, an inmate must satisfy a two-prong test that (1) the deprivation suffered was "objectively 'sufficiently serious,'" and (2) the defendant had a "sufficiently

culpable state of mind" or was "deliberately indifferent" to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991).

1.    Failure to Protect

"Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (internal quotation marks and citation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.  The objective component of the Eighth Amendment test requires Mr. Bingham to show that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  This includes "official conduct that is sure or very likely to cause serious injury at the hands of other inmates."  *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001) (internal quotation marks and citation omitted).

The subjective component of the Eighth Amendment test requires Mr. Bingham to show that Defendants had the culpable state of mind known as "deliberate indifference." *Farmer*, 511 U.S. at 834.  Deliberate indifference requires a higher degree of fault than negligence or even gross negligence.  *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted).   An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Berry*, 900 F.2d at 1496.  "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.  "To be guilty of deliberate indifference, the defendant must know he is creating a substantial risk of bodily harm." *Green v. Branson*, 108 F.3d 1296, 1302 (10th

Cir. 1997) (internal quotation marks and citation omitted).

Mr. Bingham alleges that "[a]pproximately 2 weeks prior to 10/4/09 Plaintiff . . . met with [Defendant] Martin and informed him of exactly what was going on in cell house 2. Assaults, Extortion, & Threats by the 211 gang." (*See* Doc. # 36 at p. 8 of 19 ¶ 22).  Mr. Bingham alleges and the evidence shows that his complaints were general and non-specific.  He alleges only generally that Defendant Martin refused "to do anything to put a stop to the Assaults, extortions, and threats," that Defendant Stodghill refused "to authorize the immediate removal of 7 or 8 gang members involved from cell house 2 . . . ," and that Defendant Kochevar refused "to immediately remove the 211 gang members from cell house 2," without alleging or demonstrating that he was subject to a specific threat of harm.  (*See* Doc. # 36 at 10 of 19, ¶¶ 36-38).  Mr. Bingham does not allege that he communicated to any Defendant any threat from Mr. Brashears or inmates outside of Cell House 2.  Mr. Brashear was not housed in Cell House 2 and Mr. Bingham did not know him or mention him to Defendants.  The Eighth Amendment reaches conduct that "is sure or very likely to cause serious injury at the hands of other inmates." *Benefield*, 241 F.3d at 1272 (internal quotation marks and citation omitted).  *See also McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (The mere threat of future bodily harm to a prisoner may not provide a basis for a cognizable Eighth Amendment claim.).  Mr. Bingham's allegations of his subjective fear of a general threat to his safety fail to sufficiently allege an excessive risk to his safety.  *See Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996) (allegations that Plaintiff is constantly in fear of his life by physical assaults from other inmates who may discover his crime as a sex offense at any time fail to state an Eighth Amendment claim for alleged failure to protect the plaintiffs' safety); *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996) ("[h]owever legitimate [the

plaintiff prisoner's] fears may have been, . . . it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment").

Further, to meet the subjective component of an Eighth Amendment claim, a plaintiff must establish the defendant "knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 847). The level required to make out a claim for deliberate indifference is "more blameworthy than negligence," requiring "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835. Mr. Bingham does not present evidence sufficient to demonstrate that Defendants knew of an objectively serious risk of harm to him and disregarded it. For example, Defendant Martin did everything within his authority to assist Mr. Bingham in resolving his concerns. Mr. Bingham's allegations of his subjective fear of a general threat to his safety fail to support a claim against Defendants for deliberate indifference to an excessive risk to his safety.

### 2.    Excessive Force

Mr. Bingham alleges that Defendant Aultman violated his constitutional rights by discharging pepper spray at him. The use of excessive force by a prison official on a prisoner can rise to the level of an Eighth Amendment violation. *See Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir 1992) ("excessive force claims brought by convicted prisoners fall under the rubric of the Eighth Amendment's prohibition against cruel and unusual punishment . . . "). The pivotal inquiry in an excessive use of force claim is whether force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm. *Despain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (citing *Whitley*, 475 U.S. at 320-21). An excessive force claim under the Eighth

Amendment "involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials act[ed] with a sufficiently culpable state of mind." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003).

As to the objective element, the Tenth Circuit has "assumed that the use of mace and pepper spray could constitute excessive force." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161-62 (10th Cir. 2008) (citing *DeSpain*, 264 F.3d at 978 ("[P]epper spray is an instrument with which prison officers wield their authority, or force, and thus its use implicates the excessive use of force.")). Nevertheless, the use of force is justified when there is a concern for the safety of the institution, the jailers, and the inmates. *See Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993) (gathering Eight Circuit cases). *See also Whitley*, 475 U.S. at 320 (prison official may use reasonable force to "maintain or restore discipline.") Mr. Bingham's own allegations indicate that he was engaged in a fight with inmate Brashear and that Defendant Aultman responded by using the pepper spray. The evidence shows that when he used the pepper spray, Defendant Aultman was trying to restore order to what he viewed as a disruptive situation. Defendant Aultman could have reasonably concluded that the circumstances necessitated this use of force. Defendant Aultman presents evidence that he was approximately two to three feet away from both Mr. Bingham and Mr. Brashear and did not spray the OC directly in Mr. Bingham's face. (*See* Doc. # 136-3 at 2 of 47, ¶ 9). Defendant Aultman presents evidence that he used the least amount of force possible to control the situation, that is, he administered one two-second spray toward both Mr. Bingham and Mr. Brashear. *See Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (holding that the use of two five-second bursts of pepper spray was not excessive when used to break up a fight among inmates after they had repeatedly ignored verbal commands to stop). Upon Defendant Aultman's administration of a single burst of

pepper spray, Mr. Bingham stopped fighting and was removed.  While Mr. Bingham argues that Defendant Aultman sprayed him after he stopped fighting (*see* Doc. # 142 at 5 of 17, ¶ 20), he relies merely on the allegations in the pleadings, designating no specific facts showing that there is a genuine issue for trial.  *See Bristol Co.*, 758 F. Supp. 2d at 1177 (internal quotation marks and citation omitted).  Mr. Bingham has not established that the use of pepper spray was excessive force under the circumstances.

"The subjective element of an excessive force claim turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Smith*, 339 F.3d at 1212 (internal quotation marks and citations omitted).  "It is not enough for a plaintiff to aver a single, conclusory allegation that the defendants' conduct was deliberately indifferent to the plaintiff's constitutional rights." *Jones v. Natesha*, 151 F. Supp. 2d 938, 944-45 (N.D. Ill. 2001) (internal quotation marks and citation omitted).  Mr. Bingham conclusorily alleges but does not present any evidence to show that Defendant Aultman acted with a sufficiently culpable state of mind, the second prong of an Eighth Amendment excessive force claim, by sadistically or maliciously applying force for the purpose of causing harm.  Defendant Aultman is entitled to summary judgment on Mr. Bingham's excessive force claim.

D.    Count Four

Mr. Bingham brings Count Four against Defendant Aultman for "Fifth and Fourteenth Amendment[ ] violations Due Process in Disciplinary Hearing." (*See* Doc. # 36 at 12 of 19). To the extent that Mr. Bingham alleges a Fifth Amendment violation, the Due Process Clause of the Fifth Amendment protects against due process violations by the federal government.  *See Public Utilities Comm'n v. Pollak*, 343 U.S. 451, 461 (1952) (Fifth Amendment applies to and restricts only the Federal Government and not private persons); *Junior Chamber of Commerce of Kansas City, Mo. v. Missouri State Junior Chamber of*

*Commerce*, 508 F.2d 1031, 1033 (8th Cir. 1975) (there must be a finding of federal action before there is any deprivation of due process in violation of the Fifth Amendment).  There is no allegation in this civil action of any conduct by federal government actors.  The prison where the events occurred is a state facility and Defendants are state employees.  As none of the Defendants are subject to the due process clause of the Fifth Amendment, Mr. Bingham fails to state a Fifth Amendment claim.

To the extent that Mr. Bingham alleges violation of his Fourteenth Amendment rights, "[t]he Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.' " *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. amend. XIV).  "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted).  "In determining whether an individual has been deprived of his [Fourteenth Amendment] right to procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process."  *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001) (citation omitted).  "The burden of proof as to both prongs is squarely on" Mr. Bingham. *McClary v. Kelly*, 4 F. Supp. 2d 195, 202 (W.D.N.Y. 1998).  *See also Dantzler v. Beard*, No. 05-1727, 2007 WL 5018184, at ** 2 n. 1, 6 (W.D. Pa. Dec. 6, 2007) (plaintiff has burden of establishing protected interest exists).

"The first issue in the due-process context is whether the plaintiff has established a protected interest (in this case a liberty interest)." *Toevs v. Reid*, 646 F.3d 752, 756 (10th Cir. 2011) (citations omitted).  While the Fourteenth Amendment due process guarantee applies to prison inmates, "their due process rights are defined more narrowly." *Wilson v.*

*Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005).  In the prison context, the Supreme Court has established that protected liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  *See also Wilson*, 430 F.3d at 1117 ("a prisoner is entitled to due process before he is subjected to conditions that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life, or disciplinary actions that inevitably affect the duration of his sentence.") (internal quotation marks and citation omitted).  Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . .." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

Mr. Bingham argues that Defendant Aultman deprived him of due process during the disciplinary proceedings regarding his October 4, 2009 misconduct violations "when he flat out lied on the report when h[e] put the date of discovery as 10/16/2009" and "paraded plaintiff through the Chow Hall, made comments to staff and made fun of the plaintiff[']s situation to any and all that would listen."  (*See* SAC (Doc. # 36) at 12 of 19, ¶ 48).  The court concludes that Mr. Bingham's challenge to his disciplinary convictions fails to implicate a protected liberty interest.  Mr. Bingham's punishment was hardly atypical. As a result of his disciplinary convictions, he received a total of 15 days of segregation.  (*See* Doc. # ).  This does not rise to the level of disciplinary measures that "inevitably affect the duration of his sentence."  *See Sandin*, 515 U.S. at 483-84, 487 (holding thirty days in disciplinary segregation does not rise to the level of punishment invoking the Due Process Clause).  To the extent that Mr. Bingham argues that "Plaintiff's earned/good-time credits were stripped as part of the sanctions" (*see* Doc. # 142 at 6 of 17, ¶ 21), Mr. Bingham does not have a liberty interest in earned time or good time credits.  *See Fogle v. Pierson*, 435

F.3d 1252, 1262 (10th Cir. 2006) (applying Colo. Rev. Stat. § 17-22.5-302(1) and noting "where, as here, the credits are discretionarily awarded, the defendants have not deprived [plaintiff] of any earned time to which he was entitled and thus no liberty interest is involved"); *Anderson v. Cunningham*, 319 F. App'x 706, 710 (10th Cir. 2009) ("Because under Colorado law, good time credits are discretionary, [plaintiff] does not have a protected interest in earning good time credits.") (internal quotation marks and citation omitted).

Further, the evidence shows that Defendant Aultman did not falsify the Notice of Charge(s) by entering the wrong date of October 16, 2009.  The COPD defines "Date of Discovery" as the date the Notice of Charge(s) is signed.   (*See* Doc. # 136-3 at 4 of 47, ¶ 23).  The Notice of Charge(s) was signed on October 16, 2009.  (*See* Doc. # 136-3 at 4 of 47, ¶ 24).   Finally, even if Mr. Bingham's allegation that Defendant Aultman "paraded plaintiff through the Chow Hall, made comments to staff and made fun of the plaintiff[']s situation to any and all that would listen" (*see* SAC (Doc. # 36) at 12 of 19, ¶ 48) were not controverted by the evidence (*see* Doc. # 136-3 at 3 of 47, ¶ 18), verbal taunts do not rise to the level of a constitutional violation.  *See Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) (verbal abuse normally states no constitutional violation*); Abeyta v. Chama Valley Independent School Dist. No. 19*, 77 F.3d 1253, 1256 (10th Cir. 1996) ("even extreme verbal abuse is insufficient to establish a constitutional violation"); *Wagner v. Wheeler*, 13 F.3d 86, 92-93 (4th Cir. 1993) (verbal abuse alone does not constitute a deprivation of constitutional rights); *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir. 1993) (noting that verbal abuse is insufficient to serve as the legal basis of a civil rights action); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.") (internal quotation marks and citation omitted); *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 372-73 (S.D.N.Y. 2007) (verbal harassment or even threats alone are not actionable under 42 U.S.C. §

1983).  Because no liberty interest is implicated in Mr. Bingham's disciplinary convictions, he fails to demonstrate a violation of any constitutional right.

Mr. Bingham appears to also allege that he was denied due process in his disciplinary hearing.  (*See* Doc. # 36 at 10 of 18, ¶ 28 ("[v]iolating plaintiff[']s right to be present at his own hearing"); Doc. # 142 at 5 of 17, ¶ 21 ("Plaintiff was denied access to his witnesses, disabled to present documentary evidence in his defense, and disallowed a written statement from the hearing officer which would have stated an explanation or scripted rumination as to prudent reasoning for his denial.")).  In a disciplinary proceeding, an inmate "is entitled to (i) advanced written notice of the charges against him; (ii) the opportunity, if consistent with institutional safety and correctional goals, to call witnesses and present evidence in his defense; (iii) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action; and (iv) that the conviction be supported by some evidence in the record."  *Freeman v. Carroll*, No. 06-cv-00405-MSK-KMT, 2011 WL 834170, at * 1 (D. Colo. Mar. 4, 2011) (citations omitted).  The evidence shows that all due process requirements were met.  By his signature, Mr. Bingham acknowledged receipt of the Notice of Charges, of two continuances of the hearing, and of the Disposition of Charges.  (*See* Doc. # 136-6 at 5, 6, 11 of 11; Doc. # 142-1 at 2 of 8).  One of the continuances was for the purpose of securing the testimony of Mr. Bingham's witnesses.  (*See* Doc. # 142 at 12 of 17).  Mr. Bingham participated in the disciplinary hearing via telephone.  (*See* Doc. # 140 (conventionally submitted Exhibit A-6 to Motion, 1 audio CD containing Mr. Bingham's COPD)).  The hearing officer initially accepted Mr. Bingham's proffers of the testimony of eight witnesses.  (*See id.*).  The hearing officer later reconsidered and excluded the proffered testimony of most of Mr. Bingham's witnesses, explaining that they were not witnesses to the fight and their testimony would have "no bearing" on the charges.  (*See id.*).  Mr. Bingham presented his defense.  He did not deny engaging in the fight.  He did not attempt to submit any documentary evidence.  (*See id.*).

The convictions were supported by more than some evidence in the record.

In sum, summary judgment is properly granted on Mr. Bingham's Count Four.


E.     Qualified Immunity

Defendants Kochevar, Martin, Stodghill, and Aultman in their individual capacities raise the defense of qualified immunity.   Whether a defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).  "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id*. "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id*.

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to show that (1) the defendant violated a constitutional or statutory right and (2) the constitutional or statutory right was clearly established when the alleged violation occurred. *Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003).  As the court concludes that Mr. Bingham fails to demonstrate any constitutional violation, Defendants in their individual capacities are entitled to qualified immunity.   The court need not reach the "clearly established" prong of qualified immunity to conclude that summary judgment is correctly granted in favor of Defendants.  *See Wilder*, 490 F .3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

Accordingly, IT IS RECOMMENDED that the Motion for Summary Judgment filed by Defendants Kochevar, Martin, Stodghill, and Aultman on November 22, 2011 (Doc. # 136) be GRANTED and summary judgment on the only remaining two claims in the Second Amended Complaint be entered in favor of Defendants and against Plaintiff.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived

their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 23rd day of March, 2012.

BY THE COURT:


_____s/Craig B. Shaffer_____
United States Magistrate Judge